IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIANNE ANTCZAK, on behalf of herself and other similarly situated persons | : : : : | CIVIL ACTION |
| v. | : : | |
| TD AMERITRADE CLEARING, INC., TD AMERITRADE, INC., TD AMERITRADE INVESTMENT MANAGEMENT, LLC, ULTIMATE FINANCIAL INVESTMENTS, LLC and BRIDGET A. FERNANDEZ, individually and professionally | : : : : : : : | NO. 17-4947 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                               **May 21, 2018**

Plaintiff Marianne Antczak claims that she suffered losses resulting from unsuitable investments in high risk, volatile securities. She seeks to hold liable not only her registered investment advisor, but also the custodian and the clearing house for those securities, TD Ameritrade and its affiliated corporations. Moving to strike the class action allegations, the TD Ameritrade defendants argue that the case is inappropriate for class action treatment and the claims are subject to arbitration before the Financial Industry Regulatory Authority (FINRA). Alternatively, they move to dismiss the complaint under Rule 12(b)(6), contending the class claims are precluded.

Antczak fails to state a claim for violations of federal securities laws. Her state law class action claims are precluded by the Securities Litigation Uniform Standards Act of 1998 (SLUSA). Her remaining individual state law claims are subject to FINRA arbitration. Thus, we shall grant the motion to dismiss.

**Factual Background**

Marianne Antczak engaged Ultimate Financial Investments, LLC (UFI) and its principal, Bridget Fernandez, an independent registered investment advisor, to manage her investments. UFI and Fernandez did not perform custodial or clearing services. They were provided by the TD Ameritrade defendants. TD Ameritrade is a broker-dealer providing custodial services to independent registered investment advisors and their clients through its institutional division, and to individual investors through its retail division.[1] TD Ameritrade relies on TD Ameritrade Clearing, Inc. (TDAC) to provide clearing services.[2] TD Ameritrade Investment Management, LLC (TDAIM) offers advisory services to TD Ameritrade's retail clients.[3]

In April 2012, UFI and TD Ameritrade entered into an Advisor Services Agreement in which TD Ameritrade agreed to provide brokerage services to UFI and its clients on TD Ameritrade's institutional platform.[4] Under the agreement, TD Ameritrade, identified as the account "custodian" and "broker/dealer," agreed to provide trade confirmations and account statements to UFI's clients reflecting each transaction carried

---

[1] Compl. (Doc. No. 1) ¶ 4. As a broker-dealer, TD Ameritrade provides custodial services. It "maintain[s] constructive custody of the Client's assets and provide[s] various services and reporting to both the Client and the Advisor." *Id.* ¶ 18 (quoting TD Ameritrade's Investment Policy).

[2] TDAC, as a provider of clearing services, was responsible for moving monetary funds from one account to another. *See* Compl. ¶ 11.

[3] *Id.* ¶ 3.

[4] Mot. to Strike the Class Allegations and Compel Arbitration or, in the Alternative, Dismiss the Compl. (Mot. to Dismiss) (Doc. No. 21), Ex. 1, Advisor Master Account Application, Apr. 26, 2012 (Doc. No. 21-1) § 8, Advisor Services Agreement, at ECF 7. Although the applications and agreements attached as exhibits to the Motion to Dismiss were not attached to the complaint, we may consider them because Antczak's claims are based on them. *See In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (documents "integral to or explicitly relied upon in the complaint" may be considered in deciding a motion to dismiss, without converting the motion into one for summary judgment (citations omitted)).

out by UFI. TD Ameritrade specifically circumscribed its responsibility, stating it "does not make investment recommendations or decisions."[5] It deferred to UFI as "the investment advisor" who "understands [UFI's] Clients' financial needs and investment objectives, and will only place orders suitable for its Clients."[6] The agreement directed TD Ameritrade to deduct fees that UFI charges its clients from their accounts and credit the fees to UFI's master account.[7] From April 2012 until April 2014, UFI operated on the TD Ameritrade institutional platform and processed its trades via TDAC.[8]

On July 2, 2012, Antczak entered into two institutional account agreements with TD Ameritrade, naming UFI as her advisor and authorized "agent and attorney-in-fact."[9] The agreements gave UFI discretion to trade "stocks, bonds, and any other securities and/or contracts related to the same" in Antczak's TD Ameritrade institutional accounts. The parties agreed that "TD Ameritrade has no duty or responsibility to monitor trading in [her] accounts by [her] Agent or to notify [her] prior to accepting [her Agent's] Instructions."[10]

TD Ameritrade's agreement states that "[a]ny investment decision that [Antczak] make[s] or investment strategy that [she] utilize[s] . . . is based on [her] own investment

---

[5] Mot. to Dismiss, Ex. 1, Adviser Master Account Application § 8, "Advisor's Representations and Responsibilities," § (r), at ECF 8.

[6] *Id.* § 8, "Advisor's Representations and Responsibilities," § (z).

[7] *Id.* § 8, "Payment of Management Fees and Expenses."

[8] Compl. ¶ 11; Mot. to Dismiss at 4, ECF 15; Mot. to Dismiss, Ex. 1, Advisor Master Account Application § 8, Advisor Services Agreement, at ECF 7.

[9] Mot to Dismiss, Ex. 3, TD Ameritrade Institutional Account Application, Account No. 6235, Advisor No. 3WU, July 2, 2012 (Doc. No. 21-1) at ECF 24; Mot. to Dismiss, Ex. 4, Institutional IRA Account Application, July 2, 2012 (Doc. No. 21-1) at ECF 30.

[10] Mot. to Dismiss, Ex. 3, TD Ameritrade Institutional Account Application § 8; Mot. to Dismiss, Ex. 4, Institutional IRA Account Application § 7.

3

decisions or those of [her] Advisor and is at [her] own risk."[11]  The agreement further articulates that unless TD Ameritrade provides "individualized" recommendations, Antczak or her "Advisor are responsible for determining the suitability of any trade, investment, investment strategy and risk associated with [her] investments."[12]  Antczak also agreed to indemnify and hold TD Ameritrade harmless from all losses and claims in connection with her authorization to rely on UFI's instructions.[13]

Antczak also signed an agreement with UFI, which, in her own words, "gave . . . Fernandez complete discretion to trade in [her] UFI accounts."[14]  After signing these agreements, Antczak transferred approximately $660,000 to her accounts on TD Ameritrade's institutional platform.[15]

On April 15, 2014, TD Ameritrade withdrew $1,009 from Antczak's account and credited it to UFI's account, for services covering the period from April 1, 2014, through June 30, 2014.[16]  Antczak had expressly authorized and instructed TD Ameritrade to deduct this fee from her account and to credit it to UFI's account.[17]  She also agreed

---

[11] Mot. to Dismiss, Ex. 2, TD Ameritrade Institutional - Client Agreement (Doc. No. 21-1) § 4.

[12] *Id.*

[13] Mot. to Dismiss Ex. 3, TD Ameritrade Institutional Account Application § 9; Mot. to Dismiss, Ex. 4, Institutional IRA Account Application § 8.

[14] Compl. ¶ 14.

[15] *Id.* ¶ 75.

[16] *Id.* ¶ 24.  Antczak also contends that on March 7, 2014, TD Ameritrade withdrew a $792 fee from her account for assets under management (AUM) that should have been withdrawn on January 15, 2014, as AUM fees are typically paid three months in advance.  Antczak does not claim that this AUM fee was unrelated to services rendered.  Thus, her claim to a refund of the $792 AUM fee is not relevant.

[17] Mot. to Dismiss, Ex. 3, TD Ameritrade Institutional Account Application § 9 at ECF 28; Mot. to Dismiss, Ex. 4, Institutional IRA Account Application § 8 at ECF 33 (term governing "Authorization to Pay Fees to Agent"); Mot. to Dismiss, Ex. 1, Advisor Master Account Application § 8 (term governing "Payment of Management Fees and Expenses").

that "TD Ameritrade shall rely on [UFI's] invoices and have no responsibility for the calculation or verification of fees."[18]

On April 17, 2014, TD Ameritrade sent Antczak a letter informing her that it had terminated its relationship with UFI. The letter explained that she had thirty days to transfer her institutional accounts to another brokerage or her accounts would automatically be transferred to TD Ameritrade's retail platform.[19] The letter further explained that if her accounts were transferred to the retail platform, they would be self-directed and "any cash management services or option approval you had on your advisor-managed account [on the institutional platform] will cease."[20] In other words, TD Ameritrade informed Antczak that registered investment advisors, including Fernandez, were not permitted to operate within an account held on TD Ameritrade's retail platform.

On May 8, 2014, after Antczak signed a Retail Client Agreement, her accounts were transferred to TD Ameritrade's retail platform.[21] Antczak agreed that her accounts were now self-directed and TD Ameritrade had no responsibility for any trading or investment decisions.[22] Nevertheless, despite having been notified that UFI was not authorized to have access to its retail platforms, Antczak authorized Fernandez to be

---

[18] Mot. to Dismiss, Ex. 3, TD Ameritrade Institutional Account Application § 9 at ECF 28; Mot. to Dismiss, Ex. 4, Institutional IRA Account Application § 8 at ECF 33.

[19] Compl. ¶ 25.

[20] *Id.* ¶ 66.

[21] *See* Mot. to Dismiss, Ex. 12, Retail Client Agreement, Apr. 2014 (Doc. No. 21-1) at ECF 78–89; Mot. to Dismiss, Ex. 10, Margin/Options Upgrade Form, Apr. 26, 2014 (Doc. No. 21-1) § 6 at ECF 73 (incorporating the Retail Client Agreement by reference); Mot. to Dismiss, Ex. 11, Margin/Options Upgrade Form, Apr. 26, 2014 (Doc. No. 21-1) § 6 at ECF 77.

[22] Mot. to Dismiss, Ex. 12, Retail Client Agreement, April 2014 §§ 3(a), 3(d)(1).

5

her "agent[] and attorney[]-in-fact for the purchase and sale of securities" in her accounts on the retail platform.[23] The authorization forms noted Fernandez was unemployed and made no mention of UFI.[24] Neither Antczak nor Fernandez checked the boxes identifying Fernandez as "licensed or employed by a registered broker/dealer" or that she was, or was "employed by, a federal or state registered Investment Advisor."[25] Remarkably, in her complaint, Antczak admits that she "decided to remain with Ms. Fernandez having discretion to trade in her accounts on TD Ameritrade's retail platform even though such an arrangement was not permitted by TD Ameritrade."[26]

Antczak contends that TD Ameritrade was aware that Fernandez was trading in her clients' retail accounts, including Antczak's. It sent a letter removing Fernandez's trading authority to her *other* clients, but according to Antczak, not to her.[27] The letter, dated February 2, 2015, explained that advisors are not permitted to manage accounts on the retail platform because those accounts are self-directed. Specifically, TD Ameritrade informed Fernandez's other clients that:

> Our records indicate you may have given an advisor, Bridget Fernandez, online access or Limited Power of Attorney/trading authority, to act on your behalf within your brokerage account(s). TD Ameritrade does not allow advisors to operate on our Retail Platform. As a result, Limited Power of Attorney/trading authority for Bridget Fernandez has been removed from your account. This means Bridget Fernandez will no longer

---

[23] Mot. to Dismiss, Exs. 13 & 14, Trading Authorization Agreements, May 26, 2014 (Doc. No. 21-2) at ECF 3–8.

[24] *Id.*

[25] *Id.* at ECF 4, 7.

[26] Compl. ¶ 124.

[27] According to the complaint, this letter was not sent to Antczak, but to other customers of Fernandez's with TD Ameritrade accounts. Compl. ¶¶ 68–70.

6

be able to manage your account or trade on your behalf. Bridget Fernandez has been notified of this decision.

To ensure advisory activity cease immediately, your online access has been restricted. In order to remove the restriction, you must change your login credentials on all of your accounts by calling Client Services. We ask that you do not supply the updated credentials to Bridget Fernandez (or any unauthorized party) moving forward.

You will not be required to remove your account(s) from TD Ameritrade provided the advisory relationship is fully dissolved; however, failure to discontinue the advisory relationship may cause TD Ameritrade to re-evaluate our business relationship with you.[28]

Antczak also claims that sometime after May, 2015, TD Ameritrade attempted to "supplant" Fernandez with its own TDAIM investment consultant, but she "decided to remain with Ms. Fernandez having discretion to trade in her accounts."[29] Throughout 2015 and into 2016, Fernandez continued to make unsuitable trades within Antczak's accounts.[30]

From July 2012 through 2016, Fernandez, operating through UFI, over-concentrated Antczak's accounts in unsuitable exchange-traded funds (ETFs). By the end of 2016, she alleges that her accounts lost "96% of the money and securities [she] initially moved over to TD Ameritrade [in] July of 2012."[31] She attributes these losses to the TD Ameritrade defendants' failure to monitor her accounts and to report Fernandez's unsuitable trading to regulators. She contends that TD Ameritrade had

---

[28] Compl. ¶ 68 (citing the Fernandez Removal Letter, Feb. 2, 2015).

[29] *Id.* ¶ 124.

[30] *See, e.g.*, *id.* ¶ 117.

[31] *Id.* ¶ 134.

direct knowledge of Fernandez's "securities laws violations" and did nothing to prevent it.[32]

In addition to her claim against the TD Ameritrade defendants for violations of § 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, Antczak brings state-law class action claims against the TD Ameritrade defendants for breach of contract, breach of fiduciary duty, negligence, conversion, and civil conspiracy.

## Motion to Dismiss

A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and

---

[32] *Id.* ¶ 53.

disregarding legal conclusions. Then, we determine whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

All well-pleaded allegations of the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

A court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents to the extent the plaintiff's claims are based upon them. *Hartig Drug Co., Inc. v. Senju Pharm. Co., Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (*citing Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

### Section 10(b) Unsuitability Claim

Antczak asserts a § 10(b) unsuitability claim under the Securities Exchange Act of 1934 and SEC Rule 10b–5. Antczak contends that the TD Ameritrade defendants enabled, facilitated, and concealed UFI's unsuitable trading activity in her accounts, causing losses under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5.

To state an "unsuitability" securities fraud claim, a plaintiff must aver that: (1) the securities purchased were unsuited to the plaintiff's needs; (2) the defendant knew or had reason to believe the securities were unsuitable; (3) the defendant recommended or purchased the unsuitable securities; (4) the defendant made, with scienter, material misrepresentations or, owing a duty, failed to disclose material information relating to the suitability of the securities; and (5) the plaintiff justifiably relied to her detriment on

9

the defendant's fraudulent conduct. *Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1031 (2d Cir. 1993); *see also Patel v. Wagha*, 866 F.3d 846, 847 (7th Cir. 2017).

At oral argument, Antczak's counsel conceded that the TD Ameritrade defendants neither recommended nor purchased securities for her—an essential element of a § 10(b) unsuitability claim. He acknowledged that Antczak cannot make out a federal securities fraud cause of action.

Even if Antczak continued to pursue the § 10(b) claim, it would fail. Antczak did not and cannot allege that the TD Ameritrade defendants recommended or purchased the ETFs. Nor has she alleged facts that created a duty to warn her of her advisor's unsuitable investment decisions. She has not pleaded any misrepresentations or omissions that the TD Ameritrade defendants were obliged to disclose. Thus, she has failed to state a § 10(b) unsuitability cause of action against the TD Ameritrade defendants.

According to the complaint, TD Ameritrade operated as a custodian of her accounts, both when they were advisor-managed on the institutional platform and supposedly self-directed on the retail platform. While Antczak's accounts were on the institutional platform, TD Ameritrade, acting only on instructions from Fernandez, cleared the trades ordered by Fernandez via TDAC, and deducted UFI's management fees from Antczak's accounts for credit to UFI's master account. Antczak does not allege that TD Ameritrade deviated from Fernandez's instructions. On the retail platform, despite TD Ameritrade having required that her accounts be self-directed, Antczak authorized Fernandez to continue trading for her. TD Ameritrade explicitly informed Antczak in the Account Application and the Client Agreement that

responsibility "for determining the suitability of any trade, investment, investment strategy and risk associated with the investments" rested with her and her advisor.[33] Antczak gave UFI and Fernandez discretion in making trades and investment strategy.[34] She gave no authority to the TD Ameritrade defendants to trade in her account. Nor did they. The Client Agreement warned Antczak that "TD Ameritrade has no duty or responsibility to monitor trading in [her] accounts by [her] Agent [UFI] or to notify [her] prior to accepting [UFI's] instructions."[35]

The complaint describes the limited role played by the TD Ameritrade defendants. TD Ameritrade provided custodial services to UFI and Antczak. TDAC was merely a provider of clearing services. Neither one made investment decisions or gave investment advice. Although TDAIM offers investment advice to TD Ameritrade's retail clients, it did not give any investment advice to Antczak before or after her account was transferred from the institutional platform to the retail platform. Indeed, after the account was placed on the retail platform, Fernandez continued to make all investment and trade decisions for Antczak.

An investor-directed account over which the broker-dealer has no discretion cannot support an unsuitability claim against the broker-dealer. Stated differently, where a broker-dealer does not exercise discretion and the client or the client's advisor directs the transactions, the broker-dealer cannot be liable for unsuitable trades it did not make. *Tutor Perini Corp. v. Banc of America Securities LLC*, 842 F.3d 71, 94–95 &

---

[33] Mot. to Dismiss, Ex. 2, TD Ameritrade Institutional - Client Agreement (Doc. No. 21-1) § 4.

[34] *Id.*

[35] Mot. to Dismiss, Ex. 3, Account Application § 8; Mot. to Dismiss, Ex. 4, Account Application § 7.

n.22 (1st Cir. 2016) (citing *Associated Randall Bank v. Griffin, Kubik, Stephens & Thompson, Inc.*, 3 F.3d 208, 212 (7th Cir. 1993) (citing *Brown*, 991 F.2d at 1031)). A broker-dealer is not a fiduciary with respect to an investor-directed account. *Cf. Associated Randall Bank*, 3 F.3d at 212–13.

Because TD Ameritrade was only a custodian, TDAC performed only clearing services, and TDAIM had nothing to do with Antczak's trades and investment decisions, Antczak cannot state a § 10(b) suitability claim against them.

### SLUSA Preclusion

TD Ameritrade argues that the remaining state law class action claims are "precluded" by SLUSA.[36] Antczak counters that her state law claims "have nothing to do with a fraudulent act being committed in connection with the purchase or sale of securities."[37] At oral argument, Antczak's counsel characterized the claims against the TD Ameritrade defendants as a breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and conversion. Antczak's allegations focus on the TD Ameritrade defendants' failing to report Fernandez's unsuitable trading activity to the regulatory authorities. In essence, Antczak alleges that TD Ameritrade failed to disclose material information related to the suitability of the securities.

---

[36] "The preclusion provision is often called a preemption provision; [SLUSA], however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 637 n.1 (2006) (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006)). Indeed, "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims." *Dabit*, 547 U.S. at 87.

[37] Pl. Resp. (Doc. No. 24) at 12.

12

SLUSA provides "that private state-law 'covered' class actions alleging untruth or manipulation in connection with the purchase or sale of a 'covered' security may not 'be maintained in any State or Federal court.'" *Kircher*, 547 U.S. at 636–37 (quoting 15 U.S.C. § 77p(b)). SLUSA precludes (1) a covered class action (2) brought under state statutory or common law (3) alleging a misrepresentation or omission of a material fact (4) in connection with the purchase or sale (5) of a covered security. 15 U.S.C. § 78bb(f)(1)(A); *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 299 (3d Cir. 2005). SLUSA is interpreted broadly "to ensure the uniform application of federal fraud standards." *Rowinski*, 398 F.3d at 300 (quoting S. Rep. No. 105–182); *see also Dabit*, 547 U.S. at 86.

A "covered class action" is any suit in which "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members." 15 U.S.C. § 78bb(f)(5)(B)(i)(II). The complaint does just that. It seeks to recover damages on behalf of a class of persons who suffered losses as a result of unsuitable trading. Thus, Antczak's action is a covered class action.

Covered securities are defined as "a security listed or authorized for listing on a national exchange or a security issued by an investment company that is registered under the Investment Company Act of 1940." *Knopick v. UBS Fin. Servs. Inc.*, 121 F. Supp. 3d 444, 457 (E.D. Pa. 2015) (citing 15 U.S.C. § 77r(b)(1)–(2)). The leveraged

ETFs here are traded on United States exchanges, and the index funds are covered securities. Hence, the leveraged ETFs are covered securities.

The complaint alleges state law claims predicated on material misrepresentations which induced Antczak and the class members to enter into investment contracts with advisors, "enabl[ing], facilitat[ing] and conceal[ing] registered investment advisors" who made unsuitable trades, causing losses in securities held in TD Ameritrade accounts.[38] The state law claims are based on the same allegations of misrepresentation and fraud as those comprising the federal securities fraud claim—that the TD Ameritrade defendants were complicit in Fernandez's unsuitable trading and knowingly permitted her to defraud Antczak by failing to report her conduct to regulators.

Even though Antczak now acknowledges she cannot pursue her § 10(b) claim and is pursuing her state law breaches of contract and fiduciary duty claims, her action still falls within the ambit of SLUSA preclusion. She alleges that TD Ameritrade's failure to report Fernandez's actions to regulators perpetuated unsuitable trading in ETFs, covered securities. In essence, Antczak claims that TD Ameritrade acquiesced in Fernandez's unsuitable investments with her clients' account funds.

Antczak alleges a fraudulent scheme involving the purchase and sale of securities. Her losses were caused by unsuitable trading in ETFs, a high-risk security. The fraudulent conduct, as alleged by Antczak, is that the TD Ameritrade defendants failed to monitor her accounts and to report UFI's unsuitable trades to regulatory authorities. The accounts with TD Ameritrade were held for the purpose of trading in securities. *See Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir.

---

[38] Compl. at 1.

1985). The claims arise out of the TD Ameritrade defendants' relationship to Antczak which was created to facilitate the purchase and sale of securities. Given that all of Antczak's claims are related to the trading of securities, her claims arise "in connection with" the purchase or sale of securities.

In summary, Antczak's complaint is a covered class action brought under state law alleging a material misrepresentation or omission in connection with the purchase or sale of a covered security. Therefore, pursuant to 15 U.S.C. § 78bb(f)(1), her state law class action claims are precluded by SLUSA.

SLUSA "does not pre[clude] particular 'claims' or 'counts' but rather pre[clude]s 'actions.'" *Rowinski*, 398 F.3d at 305 (quoting 15 U.S.C. § 78bb(f)(1)).[39] Because Antczak's state law claims in her class action against the TD Ameritrade defendants are precluded, the entire action against them must be dismissed. *See id.*; *see also In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 251 (3d Cir. 2009).[40]

---

[39] *See supra* note 36, explaining that SLUSA operates to preclude state law class action claims, not to preempt them. "[W]e need not decide whether a count-by-count analysis is appropriate in this case, because plaintiff has incorporated every allegation into every count in [her] complaint. Our SLUSA analysis therefore applies to each of plaintiff's counts, and compels the conclusion that each is pre[clud]ed." *Rowinski*, 398 F.3d at 305.

[40] Typically, where there is an enforceable agreement to arbitrate claims asserted in an action, the federal proceedings are stayed rather than dismissed. *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). However, because all claims against the TD Ameritrade defendants in this covered class action are precluded by SLUSA, the entire action against them must be dismissed. *Rowinski*, 398 F.3d at 305. Hence, the action will be dismissed without prejudice to the parties' right to proceed with FINRA arbitration.

At oral argument, Antczak represented that she did not intend to pursue class action claims against defendants UFI and Fernandez in the event the class claims against the TD Ameritrade defendants were dismissed. Our dismissing the action against the TD Ameritrade defendants does not preclude Antczak from proceeding to arbitration in accordance with applicable FINRA Rules.

Although the class claims are precluded, Antczak retains the right to bring her state law claims individually. *In re Lord Abbett*, 553 F.3d at 251 (citation omitted). Because there is complete diversity, Antczak's individual state law claims survive.[41]

The agreement between TD Ameritrade and Antczak requires "any controversy . . . arising out of or relating to this Agreement, our relationship, any services provided by [TD Ameritrade], or the use of the Services, and whether arising before or after the date of this Agreement, [to] be arbitrated and conducted under the provisions of . . . FINRA."[42] Class actions are exempted from FINRA arbitration. FINRA Rule 12204. Now that there are no claims against the TD Ameritrade defendants that may be brought as a class action, Antczak's individual state law claims must be arbitrated under the provisions of FINRA. Thus, we shall grant the motion to dismiss the state law claims. They may not be litigated here.

**Futility of Amendment**

At oral argument, after counsel for Antczak conceded that she could not state a § 10(b) unsuitability claim against the TD Ameritrade defendants, he was asked how he could amend the complaint to avoid SLUSA preclusion. He replied that he would add claims for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, negligence, and conversion. However, any amendment would be futile.

Casting the claims as breaches of contract and fiduciary duty does not avoid SLUSA's preclusive effect. Indeed, omissions regarding the purchase or sale of

---

[41] Compl. ¶¶ 1–8.

[42] Mot. to Dismiss, Ex. 2, § 12; *see also* Mot. to Dismiss, at 11 n.6, ECF 22.

securities, even where implicitly alleged under the guise of a breach of contract claim, are precluded by SLUSA. *See Rowinski*, 398 F.3d at 301 (citing *Prof'l Mgmt. Assoc., Inc. v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003); *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1090 (11th Cir. 2002)). Antczak has not alleged any cause of action that is not in connection with the trading or purchasing of securities. Nor can she do so if she were to file an amended complaint.

Antczak points to TD Ameritrade deducting UFI's unearned fees from her account. But, the fees were deducted for UFI serving as her broker trading securities. Thus, because those fees were in connection with the purchase or sale of securities, any state law claim predicated upon TD Ameritrade's deducting them would be precluded by SLUSA.

Antczak acknowledges that the TD Ameritrade defendants did not trade in her accounts, nor did they recommend the purchase or sale of any securities. Antczak concedes that it was she who permitted Fernandez to continue trading in her accounts after they migrated to the retail platform where she agreed they were to be self-directed.

Antczak has not and cannot identify any duty imposed on the TD Ameritrade defendants to report Fernandez to the regulatory authorities. She argues that FINRA regulations give rise to such a duty. However, FINRA Regulatory Notice 09-31 describes a firm's obligation regarding the suitability of leveraged ETFs and imposes that obligation on only those "*recommending* the purchase, sale or exchange of a security." FINRA, Regulatory Notice No. 09-31, Non-Traditional ETFs (June 2009) (emphasis added). As counsel acknowledges, the TD Ameritrade defendants made no trade recommendations.

Antczak's causes of action do not fail for want of factual specificity. They fail because under the facts alleged in the complaint and the amendments that she proposes, she cannot state a cause of action that would not trigger SLUSA preclusion. *See Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010) (discussing legal futility).

The TD Ameritrade defendants do not, despite Antczak's counsel's contentions to the contrary, owe Antczak any duty. Simply stated, there is no conceivable cause of action against the TD Ameritrade defendants that would not be in connection with the sale or purchase of securities. Consequently, it too would be precluded by SLUSA as a class action.

We are not dismissing Antczak's claims, only this action. Accordingly, her own claims survive and she may pursue them in FINRA arbitration.

**Conclusion**

Antzcak has not stated a § 10(b)(5) unsuitability claim against the TD Ameritrade defendants. Her state law class action claims are precluded by SLUSA. Therefore, we shall dismiss this action against the TD Ameritrade defendants without prejudice to her right to proceed under FINRA.